❑ Original          ❑ Duplicate Original

# UNITED STATES DISTRICT COURT
### for the
Eastern District of Wisconsin

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched* | ) | Case No.22-963M(NJ) |
| *or identify the person by name and address)* | ) | |
| cellular telephone assigned call number (703) 200-6057, with | ) | **Matter No.: 2021R00321** |
| International Mobile Subscriber Identity / Electronic Serial Number | ) | |
| 310410239268737 with listed subscriber of JACK DALY, (the | ) | |
| "Target Cell Phone"), (fully described in Attachment A) | ) | |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ District of _____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A, over which this Court has jurisdiction pursuant to 18 U.S.C. §§ 2703 and 2711 and Federal Rule of Criminal Procedure 41.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before September 2, 2022 _____ *(not to exceed 14 days)*
❑ in the daytime 6:00 a.m. to 10:00 p.m.   ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____ Hon. Nancy Joseph _____ .
*(United States Magistrate Judge)*

❑ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
❑ for _____ days *(not to exceed 30)*   ❑ until, the facts justifying, the later specific date of _____ .

Date and time issued: 8/18/2022      @ 1:31 p.m. _____

City and state: Milwaukee, Wisconsin _____

*Judge's signature*

Hon. Nancy Joseph, U.S. Magistrate Judge
*Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

      I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.


Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

**ATTACHMENT A**
**Matter No. 2021R00321**

**Property to Be Searched**

1. The cellular telephone assigned call number **(703) 200-6057**, with International Mobile Subscriber Identity / Electronic Serial Number **310410239268737**, with listed subscriber of JACK DALY **(**the "Target Cell Phone"), whose wireless service provider is AT&T, a company headquartered at 11760 US Highway 1, Suite 400, North Palm Beach, Florida 33408.

2. Records and information associated with the Target Cell Phone that is within the possession, custody, or control of AT&T, including information about the location of Target Cell Phone if it is subsequently assigned a different call number.

**ATTACHMENT B**
**Matter No. 2021R00321**

**Particular Things to be Seized**

## I.      Information to be Disclosed by the Provider

All information about the location of the Target Cell Phone described in Attachment A for a period of thirty days, during all times of day and night. "Information about the location of the Target Cell Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of AT&T, AT&T is required to disclose the Location Information to the government. In addition, AT&T must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with AT&T's services, including by initiating a signal to determine the location of the Target Cell Phone on AT&T's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate AT&T for reasonable expenses incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

**II.      Information to Be Seized by the Government**

All information described above in Section I that constitutes evidence of violations of 18 U.S.C. §§ 1001, 1343, and 1519 involving JACK DALY, NATHANAEL PENDLEY, and others yet unknown.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by AT&T in order to locate the things particularly described in this Warrant.

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched* | ) | Case No. 22-963M(NJ) |
| *or identify the person by name and address)* | ) | **Matter No.: 2021R00321** |
| cellular telephone assigned call number (703) 200-6057, with International Mobile Subscriber Identity / Electronic Serial Number 310410239268737 with listed subscriber of JACK DALY, (the "Target Cell Phone"), (fully described in Attachment A) | ) ) ) | |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, over which this Court has jurisdiction pursuant to 18 U.S.C. §§ 2703 and 2711 and Federal Rule of Criminal Procedure 41.

located in the _____ District of _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ❒ contraband, fruits of crime, or other items illegally possessed;
- ❒ property designed for use, intended for use, or used in committing a crime;
- ❒ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 1001, 1343 and 1519 | False statements within the jurisdiction of a federal agency; making false records with intent to impede, obstruct or influence the proper administration of any matter within the jurisdiction of a federal agency; and wire fraud. |

The application is based on these facts:

See the attached affidavit.

- ☑ Continued on the attached sheet.
- ❒ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

SA Eric Burns, FBI
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____ telephone _____ *(specify reliable electronic means)*.

Date: 8/18/2022 _____

_____
*Judge's signature*

City and state: __Milwaukee, ___

Hon. Nancy Joseph, U.S. Magistrate Judge
*Printed name and title*

Wisconsin_____

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

## Matter No. 2021R00321

I, Eric Burns, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number **(703) 200-6057**, with International Mobile Subscriber Identity / Electronic Serial Number **310410239268737**, and with a listed subscriber of JACK DALY (the "Target Cell Phone"), whose service provider is AT&T, a wireless telephone service provider headquartered at 11760 US Highway 1, Suite 400, North Palm Beach, Florida 33408. The Target Cell Phone is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2.      Because this warrant seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), the requested warrant is designed to also comply with the Pen Register Act. *See* 18 U.S.C. §§ 3121-3127. The requested warrant therefore includes all the information required to be included in an order pursuant to that statute.  *See* 18 U.S.C. § 3123(b)(1).

3.      I have been a Special Agent with the FBI since November 2009. I am currently assigned to an FBI squad which investigates financial crimes, civil rights crimes, and public corruption crimes. During my tenure with the FBI, I have participated investigations involving campaign finance crimes, to include fraudulent political action committees. I have participated in all aspects of investigations including executing search warrants involving, among other things,

the search and seizure of computers, computer equipment, software, and electronically stored information.

4.     The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5.     Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. §§ 1001, 1343, and 1519 have been committed by JACK DALY, NATHANAEL PENDLEY, and others. There is also probable cause to believe that the location information described in Attachment B will constitute evidence of these criminal violations, and will lead to the identification of individuals who are engaged in the commission of these offenses.

6.     The court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711.  Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, *see* 18 U.S.C. § 2711(3)(A)(i).

## BACKGROUND ON THE FEDERAL ELECTION COMMISSION (FEC) AND POLITICAL ACTION COMMITTEES (PACS)

7.     The Federal Election Commission (FEC) is the independent regulatory agency charged with administering and enforcing the federal campaign finance law. The FEC has jurisdiction over the financing of campaigns for the U.S House, Senate, Presidency and Vice Presidency. Federal campaign finance law covers three broad subjects: (1) Public disclosure of funds raised and spent to influence federal elections, (2) Restrictions on contributions and

Case 2:22-mj-00963-NJ   Filed 08/18/22   Page 8 of 28   Document 1

expenditures made to influence federal elections, and (3) The public financing of presidential campaigns.

8.     Once an individual decides to campaign or become a candidate, the individual must register with the FEC as a candidate, designate and register a principal campaign committee, and begin to file reports with the FEC.

9.     The term "committee" encompasses several different political groups that receive and spend money in federal elections. A political committee is an entity that meets one of the following conditions: (1) An authorized committee of a candidate; (2) Any club, association or other group of persons that receives contributions or makes expenditures, either of which aggregate over $1,000 during a calendar year; (3) A local unit of a political party (except a state party committee) that: (a) receives contributions aggregating over $5,000 during a calendar year; (b) makes contributions or expenditures either of which aggregate over $1,000 during a calendar year or (c) makes payments aggregating over $5,000 during a calendar year for certain activities that are exempt from the definitions of contribution and expenditure; or (4) Any separate segregated fund upon its establishment.

10.     A Political Action Committee (PAC) is a popular term for a political committee that is neither a party committee nor an authorized committee of a candidate. PACs directly or indirectly established, administered, or financially supported by a corporation or labor organization are called separate segregated funds (SSFs). PACs without such a corporate or labor sponsor are called nonconnected PACs.

11.     A nonconnected committee is any committee that conducts activities in connection with an election, but that is not a party committee, an authorized committee for any candidate for federal election, or an SSF. The name of a nonconnected committee may not include the name of

3

any candidate for federal office and may not use a candidate's name in any name under which the committee makes solicitations or other communications to the general public, unless the name clearly shows opposition to the candidate. The one exception to this rule is the name of a "draft committee." A draft committee is a political committee that is established solely to draft an individual or to encourage him or her to become a candidate for federal office. A draft committee may use the name of an individual in its official name, but only if the committee's name clearly indicates that it is a draft committee.

12.     The type of nonconnected PAC one forms depends on what he or she wants to do: make contributions to federal candidates, donate funds to state and local candidates, and/or make independent expenditures to support or oppose federal candidates.

13.     Independent expenditure-only political committees, or "Super PACs," are committees that may receive unlimited contributions from individuals, corporations, labor unions and other PACs for the purpose of financing independent expenditures and other independent political activity.

14.     The Federal Election Campaign Act ("the Act") requires political committees to register with the FEC. According to the FEC, a nonconnected committee becomes a political committee once its contributions or expenditures exceed $1,000 in a calendar year. Additionally, nonconnected committees, as is the case with all political committees required to register with FEC, are subject to certain reporting requirements.

15.     Amongst the many FEC reporting requirements, nonconnected committees are required to itemize receipts and disbursements when they meet certain criteria. With respect to disbursements, nonconnected committees must itemize, regardless of amount, when the disbursement meets any one of the following criteria: (1) Contributions to candidates and political

4

committees; (2) Expenditures for allocated federal/nonfederal activity; (3) Loan repayments; (4) Loans made by the committee; and (5) Transfers to affiliated committees. A disbursement that does not fall under of the aforementioned categories must be itemized if it exceeds $200 when aggregated with other disbursements made to the same payee during the calendar year.

## **PROBABLE CAUSE**

16.     The United States, including the FBI, is investigating allegations of a scheme organized by DALY, PENDLEY, and others, for making false representations to the FEC, misleading campaign contributors, and misappropriating contributions from the Sheriff David Clarke[1] for U.S. Senate (Official Draft Campaign) Super PAC (the "Draft Sheriff Clarke PAC").

17.     On January 19, 2017, DALY, a licensed attorney currently residing in North Carolina, registered the Draft Sheriff Clarke PAC by filing FEC Form 1, Statement of Organization, with the FEC. According to information provided by DALY on FEC Form 1, as well as information regarding the committee on the FEC's website, the Draft Sheriff Clarke PAC was formed as a nonconnected Super PAC (Independent Expenditure-Only).

18.     According to FEC Form 1 filed by DALY for the Draft Sheriff Clarke PAC, DALY listed himself as the Chairman, Treasurer, and Custodian of Records of the PAC. Furthermore, DALY listed email addresses jackwdaly@gmail.com and jackwdaly@me.com as the PAC's email addresses, and provided the Target Cell Phone as his telephone number.

19.     According to the FEC, the treasurer is responsible for filing complete and accurate reports and statements on time, signing all reports and statements, depositing receipts in the

---

[1] DAVID CLARKE is the former Sheriff of Milwaukee County and served in that role from March 2002 to August 2017.

committee's designated bank within 10 days of receipt, authorizing expenditures or appointing an agent (either orally or in writing) to authorize expenditures, monitoring contributions to ensure compliance with the Act's limits and prohibitions, and keeping the required records of receipts and disbursements.

20. On January 19, 2017, the same day DALY registered the Draft Sheriff Clarke PAC with the FEC, a Wisconsin-based television station published an article on its website regarding the Draft Sheriff Clarke PAC. The article made several references to one of the Draft Sheriff Clarke PAC's advisory board members, PENDLEY, who is also a North Carolina-based attorney. PENDLEY told the Wisconsin-based television station that the Draft Sheriff Clarke PAC already had thousands of signatures, and that PENDLEY had approached CLARKE about the U.S. Senate bid a few months prior.

21. A review of open-source database information indicates DALY and PENDLEY have historical connections and have been involved in questionable political endeavors since at least 2000. For example, in February 2000, DALY and PENDLEY recruited a homeless man to run against an incumbent North Carolina state auditor who had the same last name in order to cause confusion on the Democratic primary ballot.

22. In addition to having historical connections to DALY and being on the advisory board for the Draft Sheriff Clarke PAC, PENDLEY also received monies from the Draft Sheriff Clarke PAC that were disguised as payments to a digital design and hosting company located in North Carolina, as further described in paragraph 39 below.

23. A further review of open-source database information indicates DALY also has a history of financial issues. Between September 2011 and September 2014, DALY filed for Chapter

13 bankruptcy three times and Charter 7 bankruptcy one time. Further, in or about November 2014, DALY had his residence in Virginia, where he appeared to be living at the time, foreclosed upon.

24.     On November 18, 2016, according to information received by subpoena from Wells Fargo on December 30, 2021, DALY opened a business checking account, account number ending in x7576, in the name of Sheriff David Clark for US Senate Draft Committee d/b/a Draft Sheriff Clark (the "x7576 PAC Account"). DALY listed himself as the "Key Executive with Control of the Entity" and described the business as an FEC registered candidate draft committee. DALY was the sole signatory on the account.

25.     On February 1, 2017, according to information received by subpoena from Wells Fargo on December 30, 2021, DALY opened another business checking account, account number ending in x8501, in the name of Sheriff David Clark for US Senate Draft Committee d/b/a Draft Sheriff Clark (the "x8501 PAC Account"). DALY listed himself as the "Key Executive with Control of the Entity" and described the business as an FEC registered candidate draft committee. DALY was the sole signatory on the account.

26.     According to information received by subpoena from Wells Fargo on December 30, 2021, DALY has maintained a personal joint checking account with his spouse since September 2011, account number ending in x1873 (the "x1873 Personal Account"). DALY and his spouse are co-signatories on the account.

27.     According to information received by subpoena from Woodforest National Bank on April 12, 2022, PENDLEY has maintained a personal joint checking account with his spouse since January 2008, account number ending in x6172 (the "x6172 Personal Account"). PENDLEY and his spouse are co-signatories on the account.

7

28.     Beginning in January 2017, DALY sent fundraising emails to prospective donors from an account believed to be created, maintained, and controlled by DALY, chairman@sheriffclarkeforsenate.com[2]. In one such fundraising email, DALY identified himself as the National Chairman for the Draft Sheriff Clarke PAC. The email stated, in part, "David is willing to run: he just has to know that he has enough national support…" The email was signed, "For the Rule of Law, Jack W. Daly, Esq."

29.     On May 23, 2017, a Washington DC-based news website published an article alleging the Draft Sheriff Clarke PAC was one of several PACs soliciting donations for candidates that were not running for office. The article made reference to a book CLARKE published in February 2017 wherein CLARKE stated, "I have no interest in running for elected office other than being sheriff. I'm not running for mayor, I'm not running for congressman, I'm not running for senator, and I'm not running for governor." The website interviewed DALY for its article, and DALY stated he would be "disappointed" if CLARKE did not run for U.S. Senate. During the interview, DALY claimed more than 100,000 people had signed the PAC's "pledge" supporting CLARKE's candidacy and that 20,000 donors had already given to the Draft Sheriff Clarke PAC. DALY further claimed that he was operating the PAC as "an affair of the heart, not of the pocketbook," and went on to tell the website, "I have taken not one red cent since the first dollar came in, notwithstanding the fact that my service as its primary administrator would justify the kind of hefty salaries many PAC administrators get."

---

[2] According to information received by subpoena from Google on February 23, 2022, Google account 30554225093 is registered to email address chairman@sheriffclarkeforsenate.com. The account is subscribed to a "Jack Daly" with recovery email address jackwdaly@gmail.com and recovery telephone number **703-200-6057** (previously defined as the Target Cell Phone). The account was created on January 4, 2017 and the last login was on or about April 26, 2018.

a. According to information filed with the FEC, DALY reported the Draft Sheriff Clarke PAC had approximately 1,300 donors, in total, between January 2017 and December 2017.

30. On July 21, 2017, CLARKE was interviewed by a radio show host where he stated he was not running for U.S. Senate and that the Draft Sheriff Clarke PAC was a scam. During the interview, CLARKE stated, "Every time I turn around, I talk to people and say, 'No, I'm not running for Senate, hang onto your money'." CLARKE was asked specifically about the Draft Sheriff Clarke PAC, to which he stated, "It's a scam PAC really." Despite the public denouncement, DALY continued to solicit donations for the Draft Sheriff Clarke PAC.

a. Between July 21, 2017 and December 2, 2017, FEC contribution reports revealed the Draft Sheriff Clarke PAC received approximately $60,000 in donations, including from individuals located in the Eastern District of Wisconsin.

i. For example, on August 15, 2017, the Draft Sheriff Clarke PAC received a $500 donation from an individual residing in Kenosha, Wisconsin.

31. On July 21, 2017, according to information received by search warrant from Google on April 19, 2022, DALY sent PENDLEY an email with the subject line, "OMG." The email contained a screenshot of a Tweet by a radio talk show host. The Tweet stated, "There is a scam pac trying to convince people @SheriffClarke is running for Senate. CLARKE is NOT running for Senate. Period."

32. On September 2, 2017, at approximately 1:37 PM CST, according to information received by subpoena from AT&T on September 18, 2021, the Target Cell Phone and a telephone number believed to be used by PENDLEY had an approximately 55-minute telephone call.

9

33.     On September 2, 2017, at approximately 1:59 PM CST, and presumably while the Target Cell Phone and PENDLEY were on the telephone, according to information received by search warrant from Google on April 19, 2022, DALY received a forwarded email from CLARKE with the subject line, "Jack Daly is at it again – he's collecting contributions". The email CLARKE forwarded to DALY contained a link to donate to the Draft Sheriff Clarke PAC. CLARKE's email to DALY stated, "Jack what is this? You are well aware that I am NOT running for US Senate. I announced that a month ago and you were contacted by a local newspaper writer about my announcement that I was NOT running. Do NOT raise any more money using my name."

a.     At approximately 2:46 PM CST, and approximately 14 minutes after the Target Cell Phone and the telephone number believed to be used by PENDLEY terminated their telephone call, PENDLEY sent an email to DALY, with the subject line, "Clarke Email Response -- Fill in the bad guys." The email was addressed to "David" and signed "Jack," giving the appearance that PENDLEY was drafting a suggested response to CLARKE's email for DALY. The email stated, in part, "I stopped putting my money into the draft PAC" when CLARKE publicly denounced the Draft Sheriff Clarke PAC on July 21, 2017. The email further stated, in part, "I also stepped back as the pac's Treasurer and frankly assumed the new crew would be more or less winding things down," but that "I of course do have personal connections with the new Treasurer, and I will see what I can do."

b.     At approximately 3:48 PM CST (please note that in other legal process in this matter, a different timestamp was provided for this message, due to a scrivener's error involving the appropriate timezone), DALY responded to CLARKE using very similar and, at times, the exact same language PENDLEY recommended to

10

DALY. DALY's email to CLARKE stated, in part, that he "stopped putting my money into the draft pac" when CLARKE publicly denounced the Draft Sheriff Clarke PAC on July 21, 2017. DALY further stated, in part, "I stepped back as the pac's Treasurer" and "assumed the new crew would be more or less winding things down." DALY further stated, in part, that he "had personal connections with the new Treasurer" and would "see what I can do."

34. On September 2, 2017, between 3:19 and 3:22 PM CST, which is after DALY received the aforementioned email from PENDLEY but before DALY responded to CLARKE's email, according to information received by search warrant from Google on April 19, 2022, DALY performed the following searches utilizing his Google account: "fec treasurer ten days" and "fec appointment of new treasurer". Furthermore, at 3:22 PM CST, DALY visited a webpage on the FEC's website titled, "Appointing a treasurer."

35. On September 2, 2017, at approximately 3:59 PM CST, according to information received by search warrant from Google on April 19, 2022, DALY received an email from an editor at a Washington-DC based news website with the subject line, "Still using Sheriff Clarke's name?" The body of the email stated, in part, "It's come to my attention that the Draft Sheriff Clarke PAC is fundraising off of Clarke's resignation. Do you have any new reason to believe that Clarke is running for Senate in 2018? And do you have any comment on Clarke calling your PAC a "scam PAC" just over a month ago?"

    a. One minute later, at approximately 4:00 PM CST, DALY forwarded the aforementioned email to PENDLEY.

    b. At approximately 6:14 PM CST, DALY responded to the Washington DC-based news website editor. DALY's response email stated, "I'm behind the wheel of a car

11

as I write this. I've forwarded your email to the pac's new treasurer. It wouldn't surprise me if he's out of town for Labor Day weekend. Assuming you're working on a story, are you on deadline and who is the editor?"

36.    On September 7, 2017, at approximately 5:52 PM CST, according to information filed with the FEC, an amended FEC Form 1 was electronically filed with the FEC for the Draft Sheriff Clarke PAC to change the PAC's Treasurer and Custodian of Records from DALY to an individual named Ryan Zynka[3]. The PAC's mailing address and email address were also changed to 2020 Armstrong Mill Road #605, Lexington, KY 40515 and ryanzynka@gmail.com[3], respectively.

37.    On September 7, 2017, at approximately 2:45 PM CST, and approximately three hours before the amended FEC Form 1 was electronically filed with the FEC for the Draft Sheriff Clarke PAC, according to information received by subpoena from Google on March 1, 2022, Google account RyanZynda@gmail.com (the "fake Zynda account") was created. The fake Zynda account listed PENDLEY's email address as its recovery email address. The fake Zynda account was last logged into on December 5, 2019 at approximately 3:44 PM CST.

38.    Based on information gathered during the course of this investigation, I believe DALY and PENDLEY, and possibly others unknown, conspired to create the fake Zynda account and submit a false filing to the FEC.

---

[3] Based on information gathered during the course of this investigation, I believe the individual who purportedly replaced DALY as the Custodian of Records and Treasurer is Ryan Zynda, not Zynka. Indeed, according to information filed with the FEC for the Draft Sheriff Clarke PAC, on October 26, 2017, a second amended FEC Form 1 was filed to correct Zynka to Zynda and to correct the email address from RyanZynka@gmail.com to RyanZynda@gmail.com.

12

a. On September 7, 2017, at approximately 5:25 PM CST, which is approximately 27 minutes before the amended FEC Form 1 was electronically filed with the FEC for the Draft Sheriff Clarke PAC, according to information received by search warrant from Apple on April 22, 2022, DALY logged into the following url: https://webforms.fec.gov/webforms/form1/login.htm. DALY logged in with Username "C00631382."

   i. According to information filed with the FEC, the Draft Sheriff Clarke PAC's FEC identification number is C00631382.

b. On September 7, 2017, between 5:38 and 5:44 PM CST, while presumably logged in to the aforementioned FEC url, according to information received by search warrant from Google on April 19, 2022, DALY performed the following searches utilizing his Google account: "ryan zinke," "zachary zynka lexington ky," "zachary zynka," and "ryan zynka". The search of "ryan zynka" was performed by DALY at 5:44 PM CST, six minutes before the amended FEC Form 1 was electronically filed with the FEC for the Draft Sheriff Clarke PAC to change the PAC's Treasurer and Custodian of Records from DALY to Ryan Zynka.

c. On September 10, 2017, according to information received via search warrant from Apple on April 22, 2022, DALY logged into the fake Zynda account by visiting url https://accounts.google.com/ServiceLogin/identifier and utilizing the Username "ryanzynda@gmail.com." DALY last logged into the aforementioned url with username ryanzynda@gmail.com on December 5, 2019 at approximately 3:44PM CST, the same date and time as the last login to the Account, as indicated in paragraph 37 above.

13

39.     As indicated in paragraph 22 above, PENDLEY received monies directly from the Draft Sheriff Clarke PAC that were disguised as payments to a digital design and hosting company located in North Carolina.

    a.  Based on a review of the 2017-2018 Draft Sheriff Clarke PAC's receipts and disbursements reports filed with the FEC, between January 25, 2017 and September 18, 2017, the Draft Sheriff Clarke PAC purportedly paid $68,972.65 to an entity called Raven Creative. There were five separate disbursements to Raven Creative disclosed to the FEC by the Draft Sheriff Clarke PAC, and the purpose of the disbursements, according to the itemized disbursement reports for the disbursements to Raven Creative that were filed with the FEC by the Draft Sheriff Clarke PAC, were for "Ad production for website, radio and television," "Copywriting and editing for website, digital and print media," and "Copywriting and Editing Services."

    b.  A review of the x7576 PAC Account and x8501 PAC Account revealed $68,972.65 was paid to PENDLEY, once by check and four times by wire, on the same dates and for the same amounts as the five separate disbursements disclosed to the FEC as disbursements to Raven Creative.

40.     Like PENDLEY, DALY also received monies directly from the Sheriff David Clarke PAC that were not disclosed to the FEC. Additionally, and in contrast to DALY's history of financial issues, since establishing the Draft Sheriff Clarke PAC, DALY has purchased numerous assets using, at least in part, the monies he received directly from the Draft Sheriff Clarke PAC.

14

a. A review of the x7576 PAC Account revealed that on August 17, 2017 and August 22, 2017, DALY transferred $20,000 and $5,000, respectively, to the x1873 Personal Account. Based on a review of the 2017-2018 Draft Sheriff Clarke PAC's receipts and disbursements reports filed with the FEC, DALY did not disclose the $20,000 and $5,000 he received from x7576 PAC Account.

b. A review of the x8501 PAC Account revealed that on May 18, 2018, DALY transferred $50,000 to the x1873 Personal Account. Based on a review of the 2017-2018 Draft Sheriff Clarke PAC's receipts and disbursements reports filed with the FEC, DALY nor ZNYDA disclosed the $50,000 he received from x8501 PAC Account[4].

c. According to an open-source database search, in June 2018, DALY and his spouse purchased a residence in North Carolina for $1.45 million. The residence was financed with a $1.15 million loan. A review of the x1873 Personal Account revealed that on June 19, 2018, DALY sent approximately $270,000, via wire transfer, to a North Carolina-based law firm whose practice areas include residential property closing.

41. In addition to the purchase of a residence in North Carolina in June 2018, in May 2019, DALY purchased a property located in the U.S. Virgin Islands currently valued at over $12,000,000, according to open-source database information. Since December 2018, travel records

_____

[4] It should be noted that DALY wrote a check for $50,000, dated July 3, 2017, from the x1873 Personal Account that was subsequently deposited into the x8501 PAC Account on January 23, 2018. In reviewing the 2017-2018 Draft Sheriff Clark PAC receipts reports filed with the FEC, DALY reported $50,000 as a contribution to the Draft Sheriff Clarke PAC on July 3, 2017.

15

revealed PENDLEY and DALY frequently travel to the U.S. Virgin Islands and most recently did so in April 2022 and June 2022, respectively.

42.     According to information received by search warrant from Google on April 19, 2022, DALY performed the following notable searches on or about the following dates, not including those already mentioned:

    a.   March 20, 2017: "sheriff Clarke won't run for senate"

    b.   March 31, 2017: "what is the difference between conversion and theft"

    c.   May 22, 2017: "bice scampac sheriff Clarke"

    d.   September 25, 2017: "program to change ip address"

    e.   May 18, 2018: "scam pac indictment"

    f.   August 10, 2018: "Willie Nelson IRS"

    g.   August 10, 2018: "wesley snipes irs"

    h.   August 10, 2018: "lauren hill irs"

    i.   August 12, 2018: "benefits of renouncing us citizenship"

    j.   August 22, 2018: "feca violations"

    k.   August 22, 2018: "feca violations statute of limitations"

    l.   August 22, 2018: "wire fraud statute of limitations"

43.     According to information received by subpoena from AT&T on September 18, 2021, the Target Cell Phone and associated IMSI been subscribed to by DALY since October 26, 2008. The financially liable party is listed as Reach Right Digital Marketing LLC, an entity incorporated in the U.S. Virgin Islands and owned by DALY, with a billing address of a residence located in North Carolina where DALY also resides. Additionally, Google and Apple subscriber records revealed the Target Cell Phone is associated with DALY. Further, and as discussed above,

16

DALY provided the Target Cell Phone to the FEC when he registered the Draft Sheriff Clarke PAC.

44.     Obtaining information about the location of the Target Cell Phone will allow the FBI to identify targets, corroborate other evidence, and execute search warrants over electronic devices used by DALY, to include the Target Cell Phone. Obtaining and analyzing the Target Cell Phone will in turn allow the FBI to authenticate, contextualize, and corroborate much of the electronic evidence described above. Moreover, given DALY's acquisition of a property in the U.S. Virgin Islands in 2019, as well as his frequent travel to and from the U.S. Virgin Islands, information about the location of the Target Cell Phone will allow the FBI to map patterns of travel.

45.     In my training and experience, I have learned that AT&T is a company that provides cellular telephone access to the general public.  I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including E-911 Phase II data, also known as GPS data or latitude-longitude data and cell-site data, also known as "tower/face information" or cell tower/sector records.  E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers.  Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected.  These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas.  Furthermore, the tower

17

closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data.

46.     Based on my training and experience, I know that AT&T can collect E-911 Phase II data about the location of the Target Cell Phone, including by initiating a signal to determine the location of the Target Cell Phone on AT&T's network or with such other reference points as may be reasonably available.

47.     Based on my training and experience, I know that AT&T can collect cell-site data about the Target Cell Phone.  Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer connected at the end of the communication; and (5) the duration of the communication.  I also know that wireless providers such as AT&T typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

## AUTHORIZATION REQUEST

48.     Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

49.     I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed.  There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705.  Providing immediate notice to the subscriber or user of the Target

18

Cell Phone would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

50.     I further request that the Court direct AT&T to disclose to the government any information described in Attachment B that is within the possession, custody, or control of AT&T. I also request that the Court direct AT&T to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with AT&T's services, including by initiating a signal to determine the location of the Target Cell Phone on AT&T's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate AT&T for reasonable expenses incurred in furnishing such facilities or assistance.

51.     I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Cell Phone outside of daytime hours. What's more, the warrant will be served on AT&T, who will then compile the requested records at a time convenient to it, such that reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

19

## **ATTACHMENT A**
### **Matter No. 2021R00321**

### **Property to Be Searched**

1. The cellular telephone assigned call number **(703) 200-6057**, with International Mobile Subscriber Identity / Electronic Serial Number **310410239268737**, with listed subscriber of JACK DALY **(**the "Target Cell Phone"), whose wireless service provider is AT&T, a company headquartered at 11760 US Highway 1, Suite 400, North Palm Beach, Florida 33408.

2. Records and information associated with the Target Cell Phone that is within the possession, custody, or control of AT&T, including information about the location of Target Cell Phone if it is subsequently assigned a different call number.

20

**ATTACHMENT B**
**Matter No. 2021R00321**

**Particular Things to be Seized**

**I.      Information to be Disclosed by the Provider**

All information about the location of the Target Cell Phone described in Attachment A for a period of thirty days, during all times of day and night.  "Information about the location of the Target Cell Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of AT&T, AT&T is required to disclose the Location Information to the government.  In addition, AT&T must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with AT&T's services, including by initiating a signal to determine the location of the Target Cell Phone on AT&T's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government.  The government shall compensate AT&T for reasonable expenses incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property.  In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information.  *See* 18 U.S.C. § 3103a(b)(2).

**II.     Information to Be Seized by the Government**

All information described above in Section I that constitutes evidence of violations of 18 U.S.C. §§ 1001, 1343, and 1519 involving JACK DALY, NATHANAEL PENDLEY, and others yet unknown.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by AT&T in order to locate the things particularly described in this Warrant.